# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 05-1063V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JOHN A MURPHY *and* BARBARA E., | \* | |
| MURPHY *parent of* M.M., *a minor*, | \* | |
| | \* | Special Master Corcoran |
| Petitioners, | \* | |
| | \* | Dated: April 3, 2017 |
| v. | \* | |
| | \* | Attorney's Fees and Costs; |
| | \* | Reasonable Basis; Interim Fees; |
| SECRETARY OF HEALTH AND | \* | Expert Costs. |
| HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Patricia Ann Finn*, Patricia Finn, PC, for Petitioners.

*Ryan D. Pyles*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING INTERIM AWARD OF ATTORNEY'S FEES AND COSTS[1]

On October 5, 2005, John and Barbara Murphy filed a petition on behalf of their minor child, M.M., seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] The Petitioners alleged that several childhood vaccines M.M. received on October 14, 2002, when he was approximately 17 months old, caused an encephalopathy, resulting in M.M's purported developmental regression. An entitlement hearing was held on May 18-19, 2015, and a year later I issued a decision denying compensation on April 25, 2016. ECF No. 118. Shortly thereafter, Petitioners filed a motion for review, which was denied on August 15, 2016. ECF Nos. 119, 126. On October 13, 2016, Petitioners appealed the denial of their

---

[1] This decision will be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

motion for review to the United States Court of Appeals for the Federal Circuit, and that appeal remains pending. ECF No. 130.

Petitioners have now filed a motion requesting an interim award of attorney's fees and costs. *See generally* Motion for Interim Attorney's Fees and Costs, dated January 3, 2017 (ECF No. 132) ("Fees App."). Petitioners request an interim award of $121,261.06: $100,696.00 in attorney's fees, $11,780.06 in costs expended by Petitioners' counsel, and $8,785.00 in costs for Petitioners. Fees App. at 4. Respondent does not oppose the interim nature of the request, but has suggested that the award should be reduced because the Murphys continued to pursue the case when no reasonable basis existed. *See* Response to Motion for Interim Attorney's Fees, filed on January 19, 2017 (ECF No. 133) ("Response"). Petitioners filed a reply maintaining that their case continues to have a reasonable basis. *See* Reply to Response, filed on February 6, 2017 (ECF No. 134)("Reply").

For the reasons stated below, I hereby **GRANT IN PART** Petitioners' Motion, awarding at this time interim fees and costs in the total amount of **$72,968.86**.


## Procedural History

This matter has existed for over ten years. Petitioners originally filed their case *pro se* in October 2005, in conjunction with the Omnibus Autism Proceedings ("OAP"). Pet. at 1, filed Oct. 10, 2005 (ECF No.1). The proceedings were stayed until the OAP test cases were concluded. *See* Order, filed on June 2, 2006 (ECF No. 6). Petitioners began to file more medical records at the beginning of 2009, when the case was classified as Stage One.[3] *See* Scheduling Order, filed on Jan. 15, 2009 (ECF No. 7). By the fall of 2009, present counsel, Ms. Patricia Finn, Esq., appeared on the Petitioners' behalf.

Petitioners received several extensions of time to file medical records, finally completing the process in November 2009. Shortly thereafter, however, on December 9, 2009, this case was again stayed pending the resolution of the OAP test cases. On February 17, 2011, Petitioners were ordered to inform the court if they wanted to proceed with their case given the resolution of the OAP test cases. *See* Order, filed on Feb. 17, 2011 (ECF No. 22). Petitioners chose to remain in the Program, and filed an amended petition modifying their causation theory. *See* Amended Petition, filed on March 17, 2011 (ECF No. 23).

There was no subsequent activity in the case until the following year, when a scheduling order was issued ordering Petitioners to file an expert report or describe their progress in obtaining

---

[3] Stage One of the OAP cases was established to address the limitation of actions by requiring that all medical records from birth to the date of filing the petition or the date of initial diagnosis be filed in order for the claim to proceed. ECF No. 7.

an expert. *See* Scheduling Order, filed on March 15, 2012 (ECF No. 24). Another year then passed before Petitioners finally filed that expert report (from Dr. Mary Megson, who went on to testify for the Petitioners at hearing) on August 1, 2013. Respondent then filed his Rule 4(c) Report on November 29, 2013, including with it the expert report of Dr. Max Wiznitzer. *See* Respondent's Report, filed on Nov. 29, 2013 (ECF No. 42). That report also identified outstanding medical records that Petitioners were ordered to file by February 10, 2014. *See* Scheduling Order, filed on Dec. 17, 2013 (ECF No. 43). The deadline was subsequently extended twice to April 14, 2014, when the medical records and amended statement of completion were filed.

Shortly thereafter, on May 1, 2014, an entitlement hearing was scheduled for September 11-12, 2014. *See* Scheduling Order, filed on May 1, 2014 (ECF No. 54). However, in June 2014, due to a conflict with Petitioners' expert that date was moved to January 15-16, 2015. In the meantime, the case was reassigned to me, but then—three days before the hearing was to commence—Petitioners' counsel requested that the hearing be postponed a second time, now due to her illness. The hearing was consequently rescheduled for May 18-19, 2015. *See* Prehearing Order, filed on Jan. 13, 2015 (ECF No. 74). However, in April 2015, Petitioners requested yet another hearing continuance, now arguing that their expert was potentially unwilling to appear due to comments made about her by a different special master, and that Petitioners otherwise believed that they likely could not meet their burden of proof without the opportunity to bulwark further the record – possibly by the addition of a new expert. *See* Motion for Discovery, filed on April 1, 2015 (ECF No. 79); *see also* Motion for Extension of Time, filed on June 26, 2014 (ECF No. 58).

The two-day hearing was held as scheduled, with an additional treating doctor, Dr. Andrew Zimmerman, testifying (in part so that Petitioners could be provided an opportunity to lay the groundwork for why additional expert testimony was required). Thereafter, from May to October 2015, the parties resolved some post-hearing issues, and post-hearing briefing concluded in February 2016. On April 25, 2016, I issued a decision denying compensation to Petitioners. *See Murphy v. Sec'y of Health & Human Servs.,* No. 05-1063V, 2016 WL 3034047 (Fed. Cl. Spec. Mstr. April 25, 2016). Petitioners filed a motion for review on May 25, 2016, which was denied on August 15, 2016. *See Murphy v. Sec'y of Health & Human Servs.,* No. 05-1063V, 128 Fed. Cl. 348 (Sept. 15, 2016). The Murphys have appealed the Court's decision to the Federal Circuit, and their appeal remains pending. *See* Notice of Review, filed on Oct. 14, 2016 (ECF No. 131).

Petitioners filed this interim fee request on January 3, 2017, followed shortly by Respondent's reaction on January 9, 2017, and Petitioners' reply on February 6, 2017. They have not previously sought an interim award in this case. This matter is now ripe for a decision.

## ANALYSIS

### I.    The Case Has Sufficient Reasonable Basis for a Fees Award

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[4] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906 at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016) *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner must demonstrate reasonable basis through some evidentiary showing and in light of the totality of the circumstances. The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing (and here, particularly after the OAP test cases were concluded) is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

Based on my review of the case, record coupled with the history of counsel's representation of Petitioners as set forth in the billing records, I conclude that this matter had enough reasonable basis through the hearing and post-briefing thereafter to justify a fees award, despite the claim's lack of success (to date, admittedly). The Petitioners' claim was not particularly robust or persuasive. Indeed, aspects of their theory (in particular, those pertaining to the MMR vaccine) have been firmly discredited since completion of the OAP (and arguably should not have been pursued once the claim was amended). Petitioners did, however, offer relevant testimony from a competent treater, Dr. Zimmerman, that prior to hearing appeared likely to be entitled to some probative weight, and that could have possibly breathed some life into the claim.

In addition, aspects of Petitioners' claim that subsequent decisions rendered in the Program have suggested are baseless (in particular, the concept that post-vaccination developmental regressions can be attributed to a vaccine-induced encephalopathy even if there is no evidence of an encephalopathic reaction) had yet to be decided when this case was heard in the spring of 2015. *See, e.g., Cunningham v. Sec'y of Health & Human Servs.,* No. 13-483V, 2016 WL 4529530 (Fed. Cl. Spec. Mstr. Aug. 1, 2016) *aff'd* 2017 WL 1174448 (Fed. Cl. March 22, 2017) (disregarding "petitioner's attempt to differentiate this case from other autism cases by creating this second step" of developmental regression or loss after vaccine-induced encephalopathy). I therefore do not find

---

[4]Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

*in this case* that the overall lack of success of autism injury claims in the Program is grounds for denying fees. And while I find that the case's meandering progression is somewhat attributable to a failure to prosecute the matter vigorously, that deficiency can be addressed in determining the reasonableness of work performed, and thus does not detract from the facial reasonableness of the claim. Certainly the reasonableness of this claim was less questionable when the Murphy's filed it nearly 12 years ago.

Given the above, sufficient reasonable basis existed for this matter through its trial to entitle Petitioners to a fees award (although, as noted in more detail below, my evaluation of the reasonable basis to time devoted to appeals thereafter shall be deferred until the pending Federal Circuit appeal is resolved). And the circumstances of this case – which has been litigated for many years – makes an interim award appropriate despite the pending Federal Circuit appeal.[5]

## II.     Challenges to the Amounts Requested for Petitioners' Attorneys

### A.     *Attorney Hourly Rates*

Petitioners' request that Ms. Finn be compensated at the rate of $400 per hour for all work performed in the years 2009-2016. Ms. Finn has previously been awarded forum rates given her office's location in the New York metropolitan region. *See Dimatteo v. Sec'y of Health & Human Servs.*, No. 10-566V, 2014 WL 1509320, at *5 (Fed. Cl. Spec. Mstr. March 27, 2014); *citing with approval, Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 27, 2009)). I thus do not dispute her entitlement to a forum rate as well.

There is, however, an issue as to whether Ms. Finn is entitled to $400 per hour – a rate above even the forum rate range established in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) for an attorney of her experience, since Ms. Finn has only practiced law since 2003.[6] The forum rate ranges established in *McCulloch* for attorneys practicing 11-19 years' experience, like Ms. Finn, receive only $300-$375 per hour

---

[5] In prior decisions, I have discussed relevant Federal Circuit precedent that clearly permits the recovery of interim awards of attorney's fees and costs in Vaccine Program cases. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *see also Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 133 S. Ct. 1886 (2013); *McKellar v. Sec'y of Health and Human Servs.*, 101 Fed. Cl. 297, 302 (2011) ("interim fees are permitted even before an entitlement decision is made").

In *Avera*, for example, the Federal Circuit discussed the conditions under which an interim fees and costs award may be appropriate, such as "where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352. Here, the matter has unquestionably been protracted, and an interim award is appropriate at this juncture.

[6] Petitioners did not submit information relating to Ms. Finn's years of experience. It appears, however, that Ms. Finn was admitted to the New York bar in 2003. *Rowan v. Sec'y of Health & Human Servs.,* No. 10-272V, 2014 WL 3375588 at *2 (Fed. Cl. Spec. Mstr. June 19, 2014). Thus, Ms. Finn's experience at the beginning of the case was six years; as of today she has 14 years' experience.

– less than what she has requested. *McCulloch*, 2015 WL 5634323, at *19. In choosing what rate to award Ms. Finn within that range, I take into account that "the higher end of the range should be awarded to those with significant Vaccine Program experience who perform high quality legal work in vaccine cases." *Id.*

Based upon my experience with Ms. Finn, I find that she should be compensated at a rate within the *McCulloch* range, but not at the absolute highest end. I will instead award her rates consistent with other special masters. Beginning with her most recent work in 2016, I will award her a rate of $328, consistent with the decision in *Eschevarria v. Sec'y of Health & Human Servs.,* No. 15-100V, 2016 WL 6872975 at *3 (Fed. Cl. Spec. Mstr. Oct. 28, 2016). I will similarly apply the rate in that decision for 2015*,* awarding Ms. Finn an hourly rate of $316. *Id.* For the years 2011-2014, I will apply the rates established in *Rowan v. Sec'y of Health & Human Servs.,* No. 10-272V, 2014 WL 3375588 at *3 (Fed. Cl. Spec. Mstr. June 19, 2014), which are $310 for 2012-2014 and $300 for 2011. The only remaining year to assign a rate is 2009. Because no prior decisions have set a rate for Ms. Finn in that year, I will do so by applying the producer price index office of lawyers ("PPI-OL") formula from her 2011 rates, which will adjust the rate down for inflation.[7] After applying the PPI-OL, I award Ms. Finn a rate of $285 for 2009.

Petitioner's fees invoices also include 201.9 hours of time devoted to the matter from 2013 to 2016, and billed by a series of unidentified individuals (JL[8], JW, SS, and RW) – presumably paralegals, based on the tasks described. Fees App. at 3 ("organized and internally filed Ex. 40-42 for Patti to review) ("email to Ryan asking for consent to MET [Motion for Extension of Time]"). For them, the Petitioners request a rate of $200 an hour for JL and JW, but $145-200 for RW, without explaining any basis for the differential. *See* Fees Motion at 15. I will award the standard *McCulloch* paralegal hourly rate of $135 for work in 2014 through 2016. *McCulloch*, 2015 WL 5634323 at *21. SS was billed separately at an hourly rate of $100 for 2016, and I will keep that rate as billed. I will also award all time billed to these paralegal tasks, which appears to have been reasonable overall.

---

[7] The $285 rate was calculated by multiplying the 2011 rate of $300 by the PPI number for May of 2009, then dividing by the January 2011 PPI number, which came to $282.50 that was rounded up to $285. *See USAO Attorney's Fees Matrix 2015-2016* n. 2, https://www.justice.gov/usao-dc/file/796471/download (last visited March 23, 2017)("On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multiple screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers." The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more)).

[8] I surmise that JL is likely Jessica Lucas, who has been paid previously in cases involving Ms. Finn as a paralegal. *Rowan v. Sec'y of Health & Human Servs.*, No. 10-272V, 2014 WL 3375588 (Fed. Cl. Spec. Mstr. June 19, 2014) ("JL" is believed to be Jessica Lucas).

B.     *Hours Expended by Petitioners' Attorney*

I have previously discussed the legal standards relevant to evaluating whether attorney time devoted to a matter was reasonably spent. *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956 2015 WL 6181669 at \*11-12 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In this case, it is prudent to consider the present interim request as comprising two categories of time: work performed for the case's preparation, entitlement hearing, and post-trial briefing; and work devoted thereafter to the matter's subsequent appeals.

For the former category, I will award interim fees for work performed on the matter through December 7, 2015, with some reductions explained below. However, I will defer ruling on any fees or costs incurred thereafter,[9] or associated with either the motion for review or pending Federal Circuit appeal, until the latter is fully resolved. In other cases, I have noted that appeals of relatively weak autism claims face diminishing returns, especially in light of the overall lack of success of such claims in the Vaccine Program. *See R.V. v. Sec'y of Health & Human Servs.*, No. 08-504V, 2016 WL 7575568 at \*4 (Fed. Cl. Spec. Mstr. Nov. 28, 2016) ("noting that counsel should "act cautiously" when pursuing appeal of decisions denying entitlement in context of autism claims, and not devote excessive time to likely fruitless challenges"). I will therefore await the case's conclusion before determining whether such time should also be awarded, or if considerations of reasonable basis, or the overall reasonableness of attorney time devoted to a matter, counsel against a fees award.

1.     <u>Travel Time Billed at the Full Rate</u>

As mentioned above, a two-day hearing was held in this case from May 18-19, 2015. Ms. Finn billed a total of 11 hours of travel time by car to and from New York to Washington, D.C. at her full requested rate of $400 an hour. Fees App. at 9-10. *Id.* Special masters have, however, commonly compensated attorneys at only half their usual billing rate for travel when the time is not established to have also included work. *Rodriguez,* 2009 WL 2568468 at \*1, \*21 (finding it was reasonable to compensate the attorney at 50% of the forum rate for travel time when attorney travelled by car and did not perform any work on the case).

Given the language of the billing entry, and the fact that Ms. Finn drove, it would be difficult to conceive that she was working while travelling in this particular case, and Petitioners have not established otherwise. I will therefore cut her travelling rate (the $316 rate for work performed in 2016, as determined above) by 50 percent. This will result in an additional reduction

---

[9] The billing entries indicate that "JL" and Ms. Finn stopped working on the post-hearing brief when it was submitted on December 7, 2015, which also concluded the billing for 2016. Fees App. at 13 ("finished murphy PHB, filed"). There was additional time spent on the case beginning in 2016 (6.6 hours billed by JL, 41.8 billed by JL, 29.6 by SS, 1.7 by RW, and 1.1 hours billed by JW), but this work was to prepare and file Petitioners various appeals. Fees App. at 13-15. When Petitioners file their final motion for Attorney's Fees and Costs they may include this time.

of **$1,738.00**. ($316/2= $158/hour, $158 x 11 travel hours= $1,738.00, $3,476.00 (Original Request)-$1,738.00 (Reduction) = $1,738.00).

        2.      <u>Discounts for Inefficient Use of Time</u>

Through the course of this case, there were many delays caused in part by Petitioners' requests for extensions, both for hearings and the filing of documents. After reviewing the attorney billing records, I note that attorney work was frequently performed only on the eve of a scheduled deadline, reflecting a concerning dilatory approach to the case's prosecution that was ultimately exemplified by the two delays of trial in 2014 and 2015.

For example, on December 17, 2013, Petitioners were ordered to file outstanding medical records, a statement of completion and status report by February 10, 2014. Yet the billing records indicated that no one from Ms. Finn's office billed any hours on the matter until over six weeks later – on January 30, 2014, at which time Ms. Finn requested a subpoena and an extension of time to act until late March, which was ultimately extended again to mid-April. *See* Scheduling Order, dated Dec. 17, 2013 (ECF No. 43); Motion for Extension of Time, filed on January 30, 2014 (ECF No. 45); Fees App. at 3.

Similarly, in June 2014, the original hearing was first rescheduled due to a conflict with Dr. Megson that purportedly arose on June 10, 2014,[10] and a new prehearing order was filed setting revised deadlines for the parties' prehearing briefs, with Petitioners' due on December 15, 2014. *See* Prehearing Order, date July 1, 2014 (ECF No. 59). But after billing for reviewing the submission on that date, it was evident to me that <u>three months</u> passed until any additional work was performed on the case by anyone in Ms. Finn's office—by "JL" on October 5, 2014, which stated "begin to draft pre-hearing submission." Fees App. at 4. Worse, in the ensuing two months, there were only two more billing entries - one reviewing an order [0.2 hours] and the other [0.2 hours] for an extension of time to file the prehearing brief. *Id*.

Although I am perhaps pointing to the most egregious examples, these time entries exhibit a consistent pattern of behavior evident from the billing records. Waiting until the last minute to begin performance of tasks necessary for a claim's prosecution is wasteful and inefficient – and in this case caused several unnecessary delays in a matter that, due to its subject matter, was already protracted by the time Ms. Finn appeared. Doing so harmed the Petitioners themselves, while also squandering judicial resources by telescoping the case's life beyond what it should otherwise have.

How best to account for the reasonableness of such conduct when determining a fees award presents a quandary. As I observed in *Glaser v. Sec'y of Health & Human Servs.,* No. 06-764V,

---

[10] Although Ms. Finn stated in her motion to extend the hearing that Dr. Megson called her on June 10, 2014, there is no billing entry for that call in the record. *See* Motion for an Extension of Time, dated June 26, 2014 (ECF No. 58).

2016 WL 4491493 (Fed. Cl. Spec. Mstr. June 6, 2016) *vacated on other grounds*, 2016 WL 4483022 (June 29, 2016), the fact that an attorney billed little time to a matter over its course literally results in a lower total bill – even if, paradoxically, attorney dilatoriness and inattention to a case also imposes costs on claimants and the Vaccine Program itself. *Glaser*, 2016 WL 4491493 at*8 ("Attorneys representing petitioners alleging vaccine injuries should prosecute their clients' claims with as much speed as possible—especially where, as here, the injured party has ongoing care needs that the entitlement award will address."). Such indirect costs are especially concerning under current circumstances. The Program is inundated with filings, preventing the eight special masters from resolving them as quickly as desirable (or expected by the Act itself). *See* H.R. Rep. No. 99–908, at 17, *reprinted in* 1986 U.S.C.C.A.N. at 6358 ("The entire proceeding—from date of filing through Special Master proceedings and court review—is to take place as expeditiously as possible").When attorneys fail to act diligently in representing a petitioner's claim, they harm the ability of other claimants to obtain their own speedy entitlement determinations.

In other cases, I have resolved this dilemma through an additional hourly rate reduction. *See, e.g., Glaser,* 2016 WL 4491493 at *8 (reducing the attorney's rate by ten percent "to account for his lack of diligence in prosecuting the case, but awarding all time billed to the matter"). Here, I do not find that a lack of diligence was consistent and widespread enough throughout the entirety of the case's life (since Ms. Finn's appearance) to justify that approach. Instead, I will reduce Petitioners' counsel's award of attorney's fees for Ms. Finn's time by 20 percent for everything billed from January 2014- December 2015 – before the matter was tried, and during the time period in which it appears dilatoriness was most common. Thus, Ms. Finn billed 109.7 hours during that time period for a total of $34,559.00, but that sum will be reduced by 20 percent, leaving $27,647.20. The total reduction for the work in 2014-2015 is therefore $6,911.80.

## III.    Costs

There are two categories of costs requested herein: litigation-related costs and expert costs. As to the former, Petitioners request reimbursement for items such as hotel expenses during the hearing ($519.71) or the hearing transcript cost ($1,429.10). These rates are consistent with litigation-related expenses and I will therefore award all such requested amounts herein.

With respect to expert costs, Petitioners request $15,011.25 for Dr. Megson at a rate of $400 an hour for reviewing records, $600 per hour for consultations, and $581.25 in travel expenses (lodging, mileage, and meals). Fees App. Ex. 2 at 2. Petitioners also request $2,600 for Dr. Zimmerman (who testified as a fact witness) at a rate of $600 an hour, plus travel and waiting time at a rate of $250 an hour for a total of $500.00.

I will award both of these witnesses the sums requested for travel ( $580.67 for Dr. Megson and $500.00 for Dr. Zimmerman). Petitioners have not submitted evidence that the rates requested for either expert are appropriate, however, and in fact both appear high. In the case of Dr. Megson, a rate of $400-$600 is too high given her expertise (and lack of specific competency in the area of immunology – something apparent from her testimony, as observed in my Decision). *Murphy*, 2016 WL 3034047 at *33)). Such considerations have been taken into account by other special masters when calculating the proper rate. *See Simon v. Sec'y of Health & Human Servs.,* No. 05–941V, 2008 WL 623833, at *5 (Fed. Cl. Spec. Mstr. Feb. 21, 2008); *Doe v. Sec'y of Health & Human Servs.,* No. 02-411, 2011 WL 6941671, at *7 (Fed. Cl. Spec. Mstr. Oct. 26, 2011). I will accordingly pay her a flat rate of $300 across the board, including time testifying, rather than differentiating by task as her invoice does. Fees App. Ex. 2 at 2.

Dr. Zimmerman was proposed by Petitioners as a possible expert, but testified as M.M.'s treating physician, making him a fact witness. He may nevertheless be compensated for this time. *See Baldwin v. Sec'y of Health & Human Servs.,* No. 14-888V, 2016 WL 3597886 at *2 (Fed. Cl. Spec. Mstr. June 1, 2016) (finding it reasonable to award costs to obtain declarations from treating physicians). But, his requested rate greatly exceeds what the most highly qualified experts ever receive in Program cases. See *Dimatteo,* 2014 WL 1509320, at *8 (doctor's hourly rate of $500 should be reduced to $400 per hour because such a high fee is "notably unusual" in the Program). I will instead award him $400 per hour – consistent with similarly-situated experts, and taking into account the fact that he did not literally provide "expert" testimony in this case.

| Costs | Requested | Reduction | Total Awarded |
|---|---|---|---|
| Litigation-related Expenses | $2,953.81 | None | $2,953.81 |
| Expert Travel Expenses | $1,081.25 | None | $1,081.25 |
| Dr. Megson Costs | $14,430.00 | $4,115.00 | $10,315.00 |
| Dr. Zimmerman Costs | $2,100.00 | $700.00 | $1,400.00 |
| **Totals** | $20,565.06 | $4,815.00 | **$15,750.06[11]** |

---

[11] The billing invoices reveal that the Murphys advanced some of Ms. Finn's legal fees, in the total amount of $8,785.00. Included in those advancements were the filing fees (both for the original claim and the appeal), parts of the expert costs, and unspecified "expenses for the upcoming hearing." Although I am making reductions to the total amount of fees and costs awarded herein, the check will be made jointly payable to Petitioners and Petitioners' counsel. Ms. Finn should be sure to reimburse Petitioners in full for the $8,785.00 advanced, independent of the total sums awarded by my decision. 42 U.S.C. § 300aa-15(e)(3) ("No attorney may charge any fee for services in connection with a petition filed under section 300aa-11 of this title which is in addition to any amount awarded as compensation by the special").

**CONCLUSION**

Based on all of the above, the following chart sets forth the total calculation of Petitioners' fees award:

| Contested Sum | Requested | Reduction | Total Awarded |
|---|---|---|---|
| Ms. Finn's Fees | $63,320.00 | $14,215.70 (hourly rate)<br>$1,738.00 (travel expenses)<br>$6,911.80 (inefficient work)<br>$475.20 (appellate costs)<br>$23,340.70 (Total) | $39,979.30 |
| JL's Fees | $33,900.00 | $11,017.50 (hourly rate)<br>$5,643.00 (appellate costs)<br>$16,660.50 (Total) | $17,239.50 |
| Other Paralegal Fees | $3,476.00 | $3,476.00 | $0.00 |
| Litigation-related Expenses | $2,953.81 | None | $2,953.81 |
| Expert Travel Expenses | $1,081.25 | None | $1,081.25 |
| Expert Costs | $16,530.00 | $4,815.00 | $11,715.00 |
| **Total Requested: $121,261.06** | | **Total Reduction: $48,292.20** | **Grand Total: $72,968.86** |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I **GRANT IN PART** Petitioners' Motion for Attorney's Fees and Costs, awarding **$72,968.86** in fees and costs made payable jointly to Petitioners' counsel Patricia Finn, Esq., and Petitioners. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[12]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.